UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DR. MUHAMMAD MIRZA and ALLIED MEDICAL AND DIAGNOSTIC SERVICES, LLC, <br><br> Plaintiffs, <br><br> -v- <br><br> JOHN DOE #1 a/k/a John D., a Yelp.com user, JOHN DOE #2 a/k/a Elizabeth M., a Yelp.com user, JOHN DOE #3 a/k/a Robert R. a Yelp.com user, JOHN DOE #4 a/k/a Zoe C., a Yelp.com user, JOHN DOE #5 a/k/a Caroline P., a Yelp.com user, JOHN DOE #6 a/k/a Yelena P., a Yelp.com user, JOHN DOE #7 a/k/a Lana W., a Yelp.com user, JOHN DOE #8 a/k/a Zin N., a Yelp.com user, JOHN DOE #9 a/k/a Carly D., a Yelp.com user, <br><br> Defendants. | CIVIL ACTION NO.: 20 Civ. 9877 (PGG) (SLC) <br><br> **OPINION AND ORDER** |

**SARAH L. CAVE,** United States Magistrate Judge.

## I. INTRODUCTION

Before the Court is the motion of Plaintiffs Dr. Muhammad Mirza ("Dr. Mirza") and Allied Medical and Diagnostic Services, LLC ("AMDS") (together, "Plaintiffs") pursuant to Federal Rule of Civil Procedure 26 requesting leave to serve a third-party subpoena (the "Subpoena") on Yelp.com ("Yelp") to ascertain the identities of the John Doe Defendants (the "Motion"). (ECF Nos. 18; 19 at 1; 23 at 1). Plaintiffs argue in their supporting Memorandum of Law (the "Memorandum") that this discovery is necessary to "identify Defendants and prevent them from continuing their defamatory and harmful activity" and to advance the litigation of this action. (ECF No. 19 at 4, 14).

For the reasons that follow, Plaintiffs' Motion is GRANTED.

## II. BACKGROUND

### A. Factual Background

Plaintiffs allege the following facts in their Complaint. (ECF No. 1; see also ECF No. 19).

Dr. Mirza is a medical doctor, board-certified in internal medicine, and licensed in New York and New Jersey. (ECF No. 1 ¶ 4; see also ECF No. 19 at 2). Dr. Mirza "is not a public official and not a public figure," id., but he does own and operate the AMDS medical practice. (ECF No. 1 ¶ 10; see also ECF No. 19 at 2). "As part of Dr. Mirza's medical practice, he offers injections of Botulinum toxin A, commonly known as 'Botox,' manufactured by Allergen PLC, along with cosmetic treatments using other products." (ECF No. 1 ¶ 14; see also ECF No. 19 at 2). Some unsatisfied "patients who have undergone cosmetic procedures have chosen to voice [allegedly] false and defamatory accusations on Yelp," which the Court collectively refers to as the "Reviews." (ECF No. 1 ¶ 17; see also ECF No. 19 at 3).

As set forth in the Memorandum, Yelp is:

> a local business review and social networking site. The site has pages devoted to individual locations, such as restaurants, stores, and service providers, where Yelp [users] . . . submit reviews [for] the businesses using a one to five star [sic] rating scale. . . .Yelp[] collects name, email address, password, and zip code when a user sign[s] up for an account. The sign-up process does not require verifying a user's name or address with any identity information. . . . Users on Yelp[] can use pseudonyms . . . [and] Yelp[] does not verify the names[.] . . . Thus, it is often impossible to know who wrote a particular review based solely on publicly displayed information. . . [In addition,] Yelp[] does not display users' email addresses or other contact information for public consumption. However, Yelp[] tracks and stores mechanical information about users' activity, including IP address and geolocation information. . . . Based on Plaintiffs' and their counsel's prior experiences with Yelp[], Yelp[] refuses to provide this information to third parties without a subpoena.

(ECF No. 19 at 3–4) (internal citations omitted); Privacy Policy, Yelp, https://terms.yelp.com/privacy/en_us/20200101_en_us/#Information-We-Collect-and-How-

We-Use-It ("When you create a Yelp account, we store and use the information you provide during that process, such as the first and last name you enter, email address, zip code, physical address, and any other information you may provide during the account creation process, such as a gender, phone number, or birth date.").

On November 21, 2019, Defendant "John Doe #1," whose Yelp pseudonym is "John D." and whose account is based in "Day, FL" ("Defendant #1") wrote that Dr. Mirza is: "[p]retty terrible, rude and he's very ugly also he's a scam and a troll artist I think he may also be autistic and a little crazy in the head[.]"[1]  (ECF No. 1 ¶ 18).

On December 26, 2019, Defendant "John Doe #2" whose Yelp pseudonym is "Elizabeth M." and whose account is based in "Lancaster, PA" ("Defendant #2") also wrote a negative review making such statements as: "Dr. Mirza was extremely unprofessional and unsanitary;" "[he] crammed all of us in a tiny meeting room;" "Dr. Mirza's assistant . . . was extremely rude;" and "he g[a]ve me the wrong product, [and] I paid 500$ worth of botox to maybe get 50$ worth injected."[2]  (ECF No. 1 ¶ 25).

On January 22, 2020, Defendant "John Doe #3" whose Yelp pseudonym is "Robert R." and whose account is based in "Jessup, MD" ("Defendant #3") wrote, in relevant part: "Mirza is a hack.  Works out of gym bags in some back end storage room that was sketchy and dirty.  . . .

---

[1] Mirza Aesthetics, John D., Yelp, https://www.yelp.com/biz/mirza-aesthetics-new-york-9?hrid=DGAHH0Lccny5Q6xdL25qaA&utm_campaign=www_review_share_popup&utm_medium=copy_link&utm_source=(direct) (last visited Sept. 28, 2021).
[2] Mirza Aesthetics, Elizabeth M., Yelp, https://www.yelp.com/biz/mirza-aesthetics-new-york-6?hrid=GX-EoIn36Lr9RbgOBjfEfQ&utm_campaign=www_review_share_popup&utm_medium=copy_link&utm_source=(direct) (last visited Sept. 28, 2021).

[Y]our botox is fake. Stop scamming people. And PS, fillers and other aesthetic products need to be refrigerated, not kept in your son's basketball duffel collection."[3] (ECF No. 1 ¶ 33).

On February 28, 2020, Defendant "John Doe #4" whose Yelp pseudonym is "Zoe C." and whose account is based in "Manhattan, NY" ("Defendant #4") wrote a review claiming that Dr. Mirza's "filler is diluted" and that when she "[w]ent to [him] paid $400 (even tho it was advertise[d] at $350) and within 3 weeks the filler had dissolved."[4][5] (ECF No. 1 ¶ 40).

On March 20, 2020, Defendant "John Doe #5" whose Yelp pseudonym is "Caroline P." and whose account is based in "Lake in the Hills, IL" ("Defendant #5") wrote that Dr. Mirza is an "imposter of a doctor" who "is posting ads on Instagram to lure clients in for 50% Botox."[6] (ECF No. 1 ¶ 47).

On August 6, 2020, Defendant "John Doe #6" whose Yelp pseudonym is "Yelena P." and whose account is based in "New York, NY" ("Defendant #6") wrote that Dr. Mirza is a "[p]op-up quack doctor who will gladly botch up your face and have you pay for it." She added that patients

---

[3] Mirza Aesthetics, Robert R., Yelp, https://www.yelp.com/biz/mirza-aesthetics-new-york-9?hrid=N3xJVECus6h-oBxRHDQmzA&utm_campaign=www_review_share_popup&utm_medium=copy_link (last visited Sept. 29, 2021).

[4] Botox Juvederm Doctor, Zoe C., Yelp, https://www.yelp.com/biz/botox-juvederm-doctor-new-york?hrid=pDQvIc_0pZ4LGgU_-vt8DA&utm_campaign=www_review_share_popup&utm_medium=copy_link&utm_source=(di (last visited Sept. 29, 2021).

[5] Defendant #4 is a Yelp "Elite" member. Zoe C., Yelp, https://www.yelp.com/user_details?userid=7n1NsVA2s7JhEuEmhQGyCw (last visited Sept. 29, 2021).

[6] Mirza Aesthetics, Caroline P., Yelp, https://www.yelp.com/biz/mirza-aesthetics-new-york-9?hrid=lZyk8iz4r8aNO6LXTXPlNg&utm_campaign=www_review_share_popup&utm_medium=copy_link&utm_source=(direct) (last visited Sept. 29, 2021).

"might be getting pumped full of windex . . .So if you enjoy looking disfigured, you found your perfect 'doctor.'"[7]  (ECF No. 1 ¶ 54).

On June 23, 2020 Defendant "John Doe #7" whose Yelp pseudonym is "Lana W." and whose account is based in "Bethesda, MD" ("Defendant #7") wrote that Dr. Mirza " is a complete con artist [and f]rom the real reviews (the negative ones) that I have read everyone complains about the same stuff: it's dirty, he's fast, rude, intimidates you to upsell- which is horrible because many of his clients are insecure . . . and he dilutes his injectables" adding that "[t]hey are probably counterfeit [and] . . . he basically does 'pop ups' in locations and is never anywhere to be found."[8] (ECF No. 1 ¶ 61).

On July 23, 2020 Defendant "John Doe #8" whose Yelp pseudonym is "Zin N." and whose account is based in "Queens, NY" ("Defendant #8") wrote that Dr. Mirza "is very unprofessional" and warned prospective patients to "not let him eat your money."[9]  (ECF No. 1 ¶ 67).

Last, on August 20, 2020, Defendant "John Doe #9" whose Yelp pseudonym is "Carly D." and whose account is based in "San Francisco, CA" ("Defendant #9") wrote that Dr. Mirza "does not use full syringe and price gauges" and that "[h]e waters down his fillers and your results

---

[7]  Mirza Aesthetics, Yelena P., Yelp, https://www.yelp.com/biz/mirza-aesthetics-new-york-9?hrid=SJyIAEe7D5nwtjsC9PpQtg&utm_campaign=www_review_share_popup (last visited Sept. 29, 2021).
[8]  Mirza Aesthetics, Lana W., Yelp, https://www.yelp.com/biz/mirza-aesthetics-new-york-6?hrid=UgoMOrR0K5hGGux40RCjBQ&utm_campaign=www_review_share_popup&utm_medium=copy_link&utm_source=(direct) (last visited Sept. 29, 2021).
[9]  Mirza Aesthetics, Zin N., Yelp, https://www.yelp.com/biz/mirza-aesthetics-new-york-9?hrid=q5bxT1zhRhKEZhTVlBsJJQ&utm_campaign=www_review_share_popup&utm_medium=copy_link&utm_source=(direct) (last visited Sept. 29, 2021).

disappear in a couple of days," adding that he should "be held accountable for his fraudulent practices."[10] (ECF No. 1 ¶ 74).

Plaintiffs argue that Defendants' statements in the Reviews are false and reputationally damaging. First, "Dr. Mirza has never been diagnosed as autistic or with any mental health condition." (ECF No. 19 at 4). Rather, he "is a licensed medical doctor" (ECF No. 1 ¶ 51), who "engages in necessary procedures to ensure a sanitary practice [and he] does not intimidate his patients to buy more product [or] dilute the product purchased by the client [or] use counterfeit products, but only uses authentic products." (Id. ¶ 65). Moreover, Plaintiffs allege, while Dr. Mirza's medical practice does "operate out of different commercial office spaces," they "have a primary office location that they can be reached at, along with an office phone number and email address" (id.), and at the various locations they "follow temperature guidelines from the products' companies and always have a refrigerator on site." (Id. ¶ 37). "Plaintiffs [also allege that they] are not engaged in the practice of theft or embezzlement." (Id. ¶ 71). Because of the Reviews, Plaintiffs allege that their reputation "ha[s] been and continue[s] to be substantially and irreparably harmed," leading to lost revenue. (Id. ¶¶ 3, 22, 29, 36, 43, 50, 57, 64, 70, 77, 80–83, 86, 88, 93, 98, 101–102).

### B. Procedural History

On November 23, 2020, Plaintiffs filed the Complaint alleging claims of defamation per se, trade libel, and tortious interference with contract and seeking damages and injunctive relief. (ECF No. 1 at 2, 18–19). On December 7, 2020, Plaintiffs filed a letter-motion requesting leave to

---

[10] Mirza Aesthetics, Carly D., Yelp, https://www.yelp.com/biz/mirza-aesthetics-new-york-6?hrid=R-5xV81g48755lZxaODRMA&utm_campaign=www_review_share_popup&utm_medium=copy_link&utm_source=(direct) (last visited Sept. 29, 2021).


conduct expedited discovery. (ECF No. 5) (the "Letter-Motion"). In an Order dated December 9, 2020, Judge Fox noted that the Letter-Motion did not comply with the Court's Local Civil Rules and ordered Plaintiffs to instead submit a formal motion in accordance with Local Civil Rule 7.1(a). (ECF No. 7). On February 16, 2021, Plaintiffs filed a motion for expedited discovery (the "First Motion"), seeking to serve third-party subpoenas on Yelp along with additional third parties, such as Defendants' Internet service providers ("ISP") and email service providers. (ECF Nos. 8; 10). Accordingly, on February 17, 2021, Judge Fox denied the Letter-Motion as moot. (ECF No. 11).

On June 23, 2021, Judge Fox denied the First Motion without prejudice, finding that Plaintiffs had failed to show good cause for the requested discovery ("Judge Fox's Order"). (ECF No. 16). Explaining the reason for the denial of the First Motion, Judge Fox noted that:

> plaintiffs failed to identify: (a) "other third-party providers"; (b) what "other-party providers" provide; and (c) information the plaintiffs seek to obtain by "issuing a third-party subpoena on Yelp[] or other third-party providers." The [P]laintiffs did not provide any evidence explaining: (1) who or what "Yelp[]" is; (2) the basis for believing that "Yelp[]" has any information they intend to seek by a third-party subpoena, including any information that may serve to identify the defendants in this action. . . . [Plaintiffs also] failed to explain what "Yelp[] profiles" are or the basis for his knowledge about "Yelp[] profiles," since [Mirza] did not identify himself as having any relation to "Yelp[]." . . . [Finally,] [P]laintiffs failed to provide evidentiary support for their self-serving conclusory assertion that they "are unable to uncover the identity of Defendants without issuing a third-party subpoena on Yelp[] or other third-party providers."

Id. at 3–4.

Following Judge Fox's Order, on September 16, 2021, Plaintiffs filed the Motion (ECF No. 18), supported by the Memorandum (ECF No. 19) and declarations from Dr. Mirza (the "Mirza Declaration" (ECF No. 20)) and Haymant Parmanand, the Digital Manager of AMDS (the "Parmanand Declaration" (ECF No. 21)). According to the Parmanand Declaration, Mr.

Parmanand's responsibilities as Digital Manager include creating digital content and managing AMDS's website, customer relations, and marketing. (Id. ¶¶ 2, 4).

On September 9, 2021, the Honorable Paul G. Gardephe scheduled an initial pretrial conference for October 28, 2021, and on September 20, 2021 he adjourned the conference to January 6, 2022. (ECF Nos. 17; 23). On September 21, 2021, Judge Gardephe referred the Motion to the undersigned. (ECF No 24).

At the Court's direction, on October 1, 2021, Plaintiffs filed a supplemental submission setting forth a list "of similar requests for expedited discovery and the relief that was granted." (ECF No. 26).

### C. Jurisdiction

Plaintiffs contend that the Court may exercise personal jurisdiction over the Defendants "pursuant to 28 U.S.C. § 1332 [because] Defendants, upon information and belief, reside in the State of New York[,] []Dr. Mirza resides in New Jersey and is the sole member and principal of" AMDS, and the amount in controversy exceeds $75,000.00. (ECF Nos. 1 ¶¶ 4–8; 10 at 7). Defendants' actual place of residence has not been established conclusively; in fact, their Yelp profiles list a variety of locations including San Francisco, CA and Bethesda, MD, among others. (See Yelp pages cited supra notes 1–4, 6–10). Plaintiffs assert that the Defendants, none of whom appear to be "citizens of New Jersey," "invoke[ed] the benefits and protections" of New York "in an attempt to cause harm within the State," by targeting and identifying the Plaintiffs and causing harm within New York. (ECF Nos. 1 ¶¶ 3, 5–6, 8; 10 at 11; 20 at 6). As noted in Judge Fox's Order:

> In support of their motion, the plaintiffs submitted Mirza's declaration in which
> he states that he resides in New Jersey and is the sole member and principal of

8

> AMDS, and: (i) "[t]he persons making these posts are believed to be the defendants in the above-captioned action"; (ii) "[u]pon information and belief, and according to their Yelp[] profiles, none of the Defendants are citizens of New Jersey"; (iii) "[a]ll of the Defendants posted their comments on the Yelp pages that provide New York locations for my business"; and (iv) each defendant under a particular user name, "John D.," "Elizabeth M.," "Robert R.," "Zoe C.," "Caroline P.," "Yelena P.," "Lana W.," "Zin N." and "Carly D.," "directed the authoring of a harassing and defamatory user review of Plaintiffs on [Y]elp."

(ECF No. 16 at 2).

### III. DISCUSSION

#### A. Legal Standard

Although generally under Rule 26(d)(1), "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)," an exception may be made for "a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). Pursuant to that exception, "[c]ourts in this district have applied a 'flexible standard of reasonableness and good cause' in determining whether to grant a party's expedited discovery request." Digital Sin, Inc. v. Does 1–176, 279 F.R.D. 239, 241 (S.D.N.Y. 2012) (citing Ayyash v. Bank Al–Madina, 233 F.R.D. 325, 326–27 (S.D.N.Y. 2005); Stern v. Cosby, 246 F.R.D. 453, 457 (S.D.N.Y. 2007); see 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2046.1 (3d ed. 2011) ("Although [Rule 26(d)] does not say so, it is implicit that some showing of good cause should be made to justify such an order, and courts presented with requests for immediate discovery have frequently treated the question whether to authorize early discovery as governed by a good cause standard."). This "flexible standard of reasonableness and good cause" also requires the application of "particularly careful scrutiny since [P]laintiff[s] not only seek[] expedition, but also move[] on an

ex parte basis." Ayyash, 233 F.R.D. at 327. Careful scrutiny entails an analysis of the "substantiality of [Plaintiffs'] claims." Id. Moreover,

> [c]ases evaluating subpoenas seeking identifying information from [third-party internet service providers] regarding subscribers who are parties to litigation have considered a variety of factors to weigh the need for disclosure against First Amendment interests. These factors include: (1) a concrete showing of a prima facie claim of actionable harm; (2) specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) a central need for the subpoenaed information to advance the claim, and (5) the party's expectation of privacy.

Sony Music Ent. Inc. v. Does 1–40, 326 F. Supp. 2d 556, 564–65 (S.D.N.Y. 2004) (internal citations omitted).

### B.  Application

The Court finds that Plaintiffs have satisfied each of the factors showing that good cause exists to issue a subpoena for third-party identifying information.  See generally Sony Music, 326 F. Supp. 2d 556; Ayyash, 233 F.R.D. 325.

#### 1. Concrete showing of a prima facie claim of actionable harm

The Court finds that Plaintiffs have made a "concrete showing of a prima facie claim" of defamation sufficient to provide good cause to allow expedited discovery.[11]  Sony Music, 326 F. Supp. 2d at 565.  The Court makes that finding without prejudice to any arguments Yelp may seek to advance in opposition to the Subpoena, or any arguments that Defendants may make in a motion to dismiss the Complaint.

---

[11] The Complaint asserts claims for defamation, trade libel, and tortious interference with contract. (ECF No. 1 at 2). "[B]ecause 'libel is a species of defamation,' Kavanagh v. Zwilling, 997 F. Supp. 2d 241, 247 n.6 (S.D.N.Y.), aff'd, 578 F. App'x 24 (2d Cir. 2014) (applying New York law)," the Court need not separately address trade libel.

The Court must first determine which state's law governs the claims in this case. Because "the locus of the tort is where the plaintiff suffered injury, often the Court can resolve the choice of law analysis simply by observing the state of plaintiff's domicile and presuming that the publication injured him in that state," however, in cases involving multiple states like this one, the "locus of the tort factor begs, rather than answers, the ultimate choice of law question." Condit v. Dunne, 317 F.Supp.2d 344, 353 (S.D.N.Y.2004). In fact, "in cases where a defamatory statement is published nationally, there is only a 'presumptive' rule that the law of plaintiff's domicile applies, which 'does not hold true . . . if "with respect to the particular issue, some other state has a more significant relationship to the issue or the parties."'" Adelson v. Harris, 973 F. Supp. 2d 467, 477 (S.D.N.Y. 2013), aff'd, 876 F.3d 413 (2d Cir. 2017) (quoting Davis v. Costa-Gavras, 580 F. Supp. 1082, 1091 (S.D.N.Y. 1984)).

The Court finds that New York has a more significant relationship to the issue and to the parties than New Jersey. Although Dr. Mirza resides in New Jersey, AMDS has its "principal place of business in the State of New York" and Plaintiffs allege that the harms were directed toward their business in New York State. (ECF No. 1 ¶¶ 4–5, 8). At this stage of the proceedings, the Court will apply New York. [12]

The elements of a claim for tortious interference with a contract "are (1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the

---

[12] In any event, under New Jersey law, the elements of a defamation claim are almost identical to those under New York law. "To prove defamation [in New Jersey], a plaintiff must establish, in addition to damages, that the defendant (1) 'made a defamatory statement of fact'; (2) 'concerning the plaintiff'; (3) 'which was false'; (4) which was 'communicated to a person or persons other than the plaintiff'; (5) with the requisite level of fault." Catalanello v. Kramer, 18 F. Supp. 3d 504, 513 (S.D.N.Y. 2014) (quoting Singer v. Beach Trading Co., Inc., 876 A.2d 885, 894 (N.J. Super. Ct. App. Div. 2005)).

11

contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.'" Zohar CDO 2003-1, LTD., v. Patriarch Partners, LLC, No. 17 Civ. 307 (PKC), 2021 WL 4460547, at *19 (S.D.N.Y. Sept. 29, 2021) (quoting Kirch v. Liberty Media Corp., 449 F.3d 388, 401 (2d Cir. 2006)).  Here, Plaintiffs have stated in a conclusory manner that they "had existing contracts with [their] patients" and that "Defendants knew of [such] contracts," but the Complaint does not state the exact terms of those contracts that Defendants allegedly breached through their actions.  (ECF No. 1 ¶¶ 97–98).  For these reasons, Plaintiffs have not made a prima facie showing of a valid claim of tortious interference with contract in this case.

In New York, the elements of a defamation claim are the existence of: "1) a false and defamatory statement of and concerning the plaintiff; 2) publication by defendant of such a statement to a third party; 3) fault on part of the defendant; and 4) injury to plaintiff."  Idema v. Wager, 120 F. Supp. 2d 361, 365 (S.D.N.Y. 2000), aff'd, 29 F. App'x 676 (2d Cir. 2002); (ECF No. 19 at 12).  Here, Plaintiffs allege that the Reviews attributed to Defendants are public, intentional, and insulting statements about Plaintiffs and their business practices that have injured their reputation.  (ECF No. 1 ¶¶ 3, 18, 22, 25, 29, 32, 36, 39, 43, 46, 50, 53, 57, 60, 64, 66, 70, 73, 77, 80–83, 85–86, 88, 93, 101–102).  See Celle v. Filipino Rep. Enters. Inc., 209 F.3d 163, 177 (2d Cir. 2000) ("The gravam[e]n of an action alleging defamation is an injury to reputation.").

Whether the Reviews contain statements of protected opinion, fact, or both, however, is less clear.  Indeed, "New York courts have consistently protected statements made in online forums as statements of opinion rather than fact."  Ganske v. Mensch, No. 19 Civ. 6943 (RA), 2020 WL 4890423, at *552 (S.D.N.Y. Aug. 20, 2020) (quoting Bellavia Blatt & Crossett, P.C. v. Kel

& Partners LLC, 151 F. Supp. 3d 287, 295 (E.D.N.Y. 2015)). In addition, the First Amendment may provide some, although not "absolute protection," Sony Music, 326 F. Supp. 2d at 562 ("It is well-settled that the First Amendment's protection extends to the Internet.").

Whether the Reviews are protected by New York law, the First Amendment, or otherwise, is not for the Court to decide at this stage. If Plaintiffs' assertion that Defendants' Reviews are factually false in addition to merely insulting statements of protected opinion, then all of the elements for a defamation claim would be met, and the statements may rise to the level for which the law provides a remedy. See Celle, 209 F.3d at 178 (clarifying that "[w]hether a particular statement constitutes fact or opinion is a question of law" and "[i]f the [defamatory] statement reasonably would be understood as implying undisclosed facts then it is not protected opinion") (citations omitted). Moreover, "if a statement is defamatory per se," as Plaintiffs claim here, "injury is assumed." Id. at 179. Thus, Plaintiffs have made a concrete showing of a prima facie claim of defamation. See TransUnion LLC v. Ramirez, ___ U.S. ___, 141 S. Ct. 2190, 2204 (2021) (noting that "[c]hief among" actionable harms "are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. Those include, for example, reputational harms[.]") (internal citations omitted).

The circumstances here are distinguishable from a recent case in which another court in this District denied the same Plaintiffs' motion to compel Yelp to provide the name and address of a John Doe defendant because Plaintiffs did not make "a sufficient showing of prima facie defamation." See Mirza v. Yelp, Inc., 21-MC-621 (S.D.N.Y. Aug. 25, 2021) (ECF No. 23 at 1) ("August 25 Order"). The Yelp review at issue in that case stated: "Worst experience I've ever had! Woke up looking like a monster!!! Cheap product and he's absolutely not experienced nor

13

does he care!!!!!" Id. The court found that that review contained a "'loose, figurative or hyperbolic tone' that 'suggest[s] to a reasonable reader that the author was merely expressing his opinion based on a negative business interaction with [a] plaintiff[],' [making] that statement []one of opinion.'" Id. at 4 (quoting Torati v. Hodak, 47 N.Y.S.3d 288, 290 (1st Dep't 2017)). Here, however, Defendants' Reviews are more numerous, longer, and more importantly, appear to contain several factual statements in addition to statements of opinion or hyperbole. For example, Defendant #2 wrote that Dr. Mirza "g[a]ve [her] the wrong product, [and she] paid 500$ worth of [B]otox to maybe get 50$ worth injected." (ECF No. 1 ¶ 25). This is a statement of fact, which Plaintiffs alleged in their Complaint was false. (Id. ¶ 30 (alleging that Plaintiffs "always ensure that the correct product is used and [it is] the amount of product that is paid for")). Defendant #3 wrote that Dr. Mirza's "[B]otox is fake" and implied that Plaintiffs' practice is to keep products requiring refrigeration in "duffel" bags. (Id. ¶ 33). Plaintiffs challenge this statement as false, explaining that they "follow temperature guidelines from the products' companies and always have a refrigerator on site." (Id. ¶ 37). Defendant #4 stated that Dr. Mirza's "filler is diluted" and that Defendant #4 "[w]ent to [him and] paid $400 (even tho[ugh] the service] was advertise[d] at $350)." (Id. ¶ 40). In response, Plaintiffs contend that Defendants were "fully informed of the price of their services before payment [wa]s due." (Id. ¶ 44). Defendant #5 wrote that Dr. Mirza "lure[s] clients in for 50% Botox," and Defendant #9 also alleged that Dr. Mirza "waters down his fillers." (Id. ¶¶ 47, 74). Plaintiffs allege that this is factually untrue because Plaintiffs do not "dilute the product purchased by the client [or] use counterfeit products." (Id. ¶ 65). In addition, the August 25 Order noted that "when the Court authorized expedited issuance of the Yelp subpoena" in that case, it "did not address whether

14

Plaintiffs had stated a prima facie claim." August 25 Order at 5. Here, based on Plaintiffs' submission, the Court has been able to evaluate whether Plaintiffs have stated a prima facie defamation claim. For these reasons, the Court finds that the August 25 Order does not preclude issuance of the Subpoena.

### 2. Specificity of the discovery request

The Court finds the level of specificity in the Subpoena to be sufficient. In accordance with Judge Fox's Order noting that "[P]laintiffs do not specify in their moving papers that they seek leave to serve subpoenas on third parties, [but] it appears that [P]laintiffs seek leave to serve a third-party subpoena on 'Yelp[] or other third-party providers,'" Plaintiffs now have identified: (i) the exact third party on whom they would like for the court to serve the Subpoena, (ii) what they mean by "third party providers," and (iii) what exactly they hope to access. (ECF No. 16 at 3). The third party is Yelp, there are no further "third party providers," and Plaintiffs seek access to "information and/or documents in [Yelp's] possession, custody or control which positively identify Defendants." (ECF No. 19 at 4). In particular, Plaintiffs seek "(1) email address, (2) IP addresses, (3) mailing address, and (4) [the] full name[s] of each Defendant from Yelp." (Id. at 12).

### 3. The absence of alternative means to obtain the information

Plaintiffs assert that they "are unable to uncover the identity of Defendants without issuing a third-party subpoena on Yelp." (ECF No. 19 at 10). Plaintiffs argue that "[c]ourts . . . have found 'good cause' for expedited discovery to determine the identity of John Doe defendants where the plaintiff has stated a prima facie case and is unable to identify the defendants without a court-ordered subpoena." (Id. (citing adMarketplace, Inc. v. Tee Support,

15

Inc., No. 13 Civ. 5635 (LGS), 2013 WL 4838854, at *2 (S.D.N.Y. Sept. 11, 2013)). The Court accepts Plaintiffs' representation that they have engaged in earnest "attempt[s] to search their own business records for the identities of" Defendants. (ECF No. 19 at 11). Because those attempts have been unsuccessful, Yelp displays only Defendants' first names and last initials, and even these may be false (except in the case of "Elite" user, Defendant #4), the Court accepts that the Subpoena may be the only tool at Plaintiffs' disposal to determine Defendants' identities. Where there is "no other way of obtaining the identities of the alleged infringers" courts in this District have found discovery to be permissible, and "expedited discovery []necessary to prevent the requested data from being lost forever as part of routine deletions by the ISPs." Digital Sin, 279 F.R.D. at 241–42.

### 4. A central need for the information to advance the claim

"Courts in this district routinely find 'good cause' for expedited discovery to determine the identity of John Doe defendants where a Plaintiff is able to make out a prima facie case and is otherwise unable to identify the Defendants without a court-ordered subpoena," as is the case here. Strike 3 Holdings, LLC v. Doe, 329 F.R.D. 518, 521 n.1 (S.D.N.Y. 2019) (citing John Wiley & Sons, Inc. v. John Does 1-22, Nos. 12 Civ. 4231 (PAC), 12 Civ. 4232 (PAC), 12 Civ. 4730 (PAC), 2013 WL 1091315, at *5 (S.D.N.Y. Mar. 15, 2013); John Wiley & Sons, Inc. v. Doe Nos. 1–30, 284 F.R.D. 185, 189 (S.D.N.Y. 2012); Next Phase Distrib., Inc. v. John Does 1–27, 284 F.R.D. 165, 171 (S.D.N.Y. 2012); Malibu Media, LLC v. John Does 1–11, No. 12 Civ. 3810 (ER), 2013 WL 3732839, at *2 (S.D.N.Y. July 16, 2013)). To recover for any damages, Plaintiffs must know who the Defendants actually are and serve process. "Because [Plaintiffs] ha[ve] alleged a prima facie case . . . and

16

[they] cannot identify John Doe[s] without a court-ordered subpoena, the Court agrees that there is good cause to allow for early discovery." Next Phase Distrib., 284 F.R.D. at 171–72.

Moreover, knowledge of the identities of the Defendants "is critical for establishing that personal jurisdiction is proper in this Court." Digital Sin, 279 F.R.D. at 241 n.3 (citing Digiprotect USA Corp. v. Does 1–266, 2011 WL 1466073, at *34 (S.D.N.Y. Apr. 13, 2011)). While the Plaintiffs noted in their Complaint that "upon information and belief, [Defendants] are residents of the State of New York," this is not yet certain, and indeed is contradicted by the locations Defendants listed on Yelp. (ECF No. 1 ¶ 8); see Yelp pages cited supra notes 1–4, 6–10. Moreover, while some names and locations are visible on Yelp, and the website "collects name, email address, password, and zip code when a user sign[s] up for an account," "not everyone uses their real name or location when posting" nor are they required to do so unless they are an "Elite" Yelp member.[13]  (ECF No. 21 ¶¶ 6, 9, 14); Do I need to use my real name on Yelp?, Yelp, https://www.yelp-support.com/article/Do-I-need-to-use-my-real-name-on-Yelp?l=en_US   (last visited Sept. 29, 2021) ("[W]hile we encourage Yelp members to use their real names, it isn't a requirement. Yelpers who choose not to use their real names aren't eligible for the Yelp Elite Squad."). Thus, until the identity of the Defendants is known, the Court cannot confirm that diversity jurisdiction exists under 28 U.S.C. § 1332. Should discovery yield information revealing that this Court lacks jurisdiction, "the Court will of course reassess the issue of personal jurisdiction." Digital Sin, 279 F.R.D. at 241 n.3.

---

[13] Plaintiffs alleged that "none of the Defendants are 'Elite' users" (ECF No. 21 ¶ 13), but Defendant #4 is an Elite Yelp user. (See supra note 5).

### 5. The parties' expectation of privacy

Reviewers on anonymous rating websites can reasonably expect <u>some</u> degree of privacy. As noted above, "[t]he Supreme Court has recognized that the First Amendment protects anonymous speech," including speech on the Internet. <u>Sony Music</u>, 326 F. Supp. 2d at 562 (citing <u>Buckley v. Am. Const. L. Found., Inc.</u>, 525 U.S. 182 (1999)).

However, "even where [parties] assert 'sensitive and personal privacy interests, courts have denied [their] motion[] to proceed anonymously where they "do not assert that the disclosure of their names would subject them to retaliatory physical or mental harm."'" <u>Taylor v. Doe</u>, No. 20 Civ. 03398 (MKV), 2021 WL 2940919, at *5 (quoting <u>Doe v. Gong Xi Fa Cai, Inc.</u>, No. 19 Civ. 2678 (RA), 2019 WL 3034793, at *2 (S.D.N.Y. July 10, 2019)).  In this case, as in <u>Sony Music</u>, there is no reason to believe that Defendants would be subject to either retaliatory physical harm, or retaliatory mental harm (beyond the foreseeable stress of being a named defendant in a lawsuit), should their identities be revealed.  See <u>Sony Music</u>, 326 F. Supp. 2d at 564 ("[T]he First Amendment does not bar disclosure of the Doe defendants' identities."); <u>Doe v. Townes</u>, No. 19 Civ. 8034 (ALC) (OTW), 2020 WL 2395159, at *4 (S.D.N.Y. May 12, 2020) ("The risks must be more than speculative claims of physical or mental harms.").

In fact, Defendants would have been on constructive notice that anyone who uses Yelp may be sued for leaving insulting reviews.  Yelp has a web page devoted to this topic, advising users that "[i]f you, as a reviewer, have been threatened with a lawsuit, we urge you to check your facts and make sure you can still stand behind your review.  If not, we advise you to remove it.  Please contact an attorney if you are actually sued."  <u>Support Center Legal Questions</u>, Yelp,

18

https://www.yelp-support.com/article/Do-Yelpers-ever-get-sued-for-posting-negative-reviews?l=en_US (last visited Sept. 29, 2021).  In addition, Yelp's Privacy Policy states:

> We may investigate and disclose information from or about you if we have a good faith belief that such investigation or disclosure: (a) is reasonably necessary to comply with legal or law enforcement processes, such as a search warrant, subpoena, statute, judicial proceeding, or other legal process or law enforcement request; (b) is helpful to prevent, investigate, or identify possible wrongdoing in connection with the Service; or (c) protects our rights, reputation, property, or that of our users, affiliates, or the public, such as disclosures in connection with Yelp's Consumer Alerts program.

Privacy Policy, Yelp, https://terms.yelp.com/privacy/en_us/20200101_en_us/#Information-We-Collect-and-How-We-Use-It (last visited Sept. 29, 2021) (emphasis added).  Thus, Yelp users have implicitly agreed to the release of their personal data if it is required by a court order.[14]

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion is GRANTED.  The Clerk of Court is respectfully directed to close ECF No. 18.


Dated:      New York, New York
            October 6, 2021

                                            SO ORDERED.

---

[14] The Court notes, however, that Yelp users may also receive contrary messages from Yelp.  At some time since August 25, 2021, Yelp created a pop-up notification on Dr. Mirza's "Mirza Aesthetics" and "Botox Juvederm Doctor" pages entitled "Consumer Alert: Questionable Legal Threats."  The notification warns that "[t]his business may have tried to abuse the legal system in an effort to stifle free speech, for example through legal threats or contractual gag clauses," and reminds "reviewers who share their experiences" that they "have a First Amendment right to express their opinions on Yelp."  Botox Juvederm Doctor, Yelp, https://www.yelp.com/biz/botox-juvederm-doctor-new-york?hrid=pDQvIc_0pZ4LGgU_-vt8DA&utm_campaign=www_review_share_popup&utm_medium=copy_link&utm_source=(di     (last visited Oct. 6, 2021); Mirza Aesthetics, Yelp, https://www.yelp.com/biz/mirza-aesthetics-new-york-6?osq=Mirza+Aesthetics (last visited Oct. 6, 2021).  The notification links to the August 25 Order.

19

_____
**SARAH L. CAVE**
**United States Magistrate Judge**